**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HEIDI J. INGRAO and BRADLEY B. INGRAO,**
**as Parents and Natural Guardians of RBI, an infant,**

|                                                | **Plaintiffs,** |                               |
|------------------------------------------------|-----------------|-------------------------------|
| **- against -**                                |                 | **1:01-CV-730**               |
|                                                |                 | **(Lead Case)**               |

**THE COUNTY OF ALBANY, NEW YORK, and**
**THE COUNTY OF MONTGOMERY, NEW YORK,**

                            **Defendants.**

_____

**HEIDI J. INGRAO and BRADLEY B. INGRAO,**
**as Parents and Natural Guardians of RBI, an infant,**

|                                                | **Plaintiffs,** |                               |
|------------------------------------------------|-----------------|-------------------------------|
| **- against -**                                |                 | **1:04-CV-769**               |
|                                                |                 | **(Member Case)**             |

**CLAUDETTE M. GROSSI, JANET LYNCH, MARGARET**
**FLYNN, TERESA M. FITZPATRICK, ANDREA BURGER,**
**BARBARA M. LYNCH, JO HEPINSTALL, WILLIAM L.**
**AUSTIN, ROBERT REIDY, and ROSEMARY BROWN, all**
**in their Individual Capacities.**

                            **Defendants.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

     Plaintiffs Heidi J. Ingrao and Bradley B. Ingrao, the adoptive parents of RBI,

commenced an action on May 18, 2001 asserting claims against Albany County and

1

Montgomery County for acts or omissions that purportedly occurred while RBI was under the care of the Albany County Department of Social Services ("ACDSS").  See Compl. [dkt. # 1] in  Ingrao v. County of Albany, 1:01-CV-730 (N.D.N.Y.) ("Ingrao I").  Part of the action was stayed for several years due to the pendency of a bankruptcy proceeding by Montgomery County's insurance carrier,  see dkt. # 13, # 15, # 16, # 17, # 20 in Ingrao I, although discovery did proceed with regard to claims against Albany County.  On July 2, 2004, Plaintiffs commenced a separate action against Claudette M. Grossi, Janet Lynch, Margaret Flynn, Teresa M. Fitzpatrick, Andrea Burger, Barbara M. Lynch and Jo Hepinstall, employees of the ACDSS, and against William L. Austin, Robert Reidy, and Rosemary Brown, employees of the Montgomery County Department of Social Services ("MCDSS").  See Compl. [dkt. # 1] in Ingrao v. Grossi, et al., 1:04-CV-769 (N.D.N.Y.) ("Ingrao II").   On October 15, 2004, Plaintiffs filed an Amended Complaint in Ingrao I. See Am. Compl. [dkt. # 92] in  Ingrao I.

On March 31, 2006, the Court issued a Decision and Order on the defendants' motions for summary judgment in Ingrao II. See 3/31/06 Dec. & Ord. [dkt. # 91] in Ingrao II.  In that Decision, the Court granted summary judgment to Defendants Fitzpatrick, Austin, Reidy, and Brown, and denied summary judgment with leave to renew as to the remaining defendants.  Id.   Familiarity with the March 31, 2006 Decision and Order is presumed.

On October 2, 2006, the Court issued a Decision and Order on Albany County's motion for summary judgment and Plaintiffs' cross-motion for summary judgment in Ingrao

2

I.  See 10/2/06 Dec. & Ord. [dkt. # 178] in Ingrao I.[1]  In that decision, the Court granted in part and denied in part Albany County's motion, and denied Plaintiffs' cross-motion. Id. Familiarity with the October 2, 2006 Decision and Order is also presumed.

On January 18, 2007, the Court (1) granted the joint motion to dismiss all claims and counterclaims against Montgomery County, Austin, Reidy & Brown; see 1/18/07 Order [dkt. # 218] in Ingrao I;  and (2) granted Albany County's motion to consolidate Ingrao I and Ingrao II.  Consolidation was granted because the two cases arise from the same transactions and occurrences, and raise similar legal issues. See 1/18/07 Dec. & Ord. [dkt. # 217] in Ingrao I.

Now before the Court is the renewed motion for summary judgment in Ingrao II by the remaining defendants - Claudette M. Grossi, Janet Lynch, Margaret Flynn, Andrea Burger, Barbara M. Lynch and Jo Hepinstall.

## II.    BACKGROUND

The relevant general background for this case has been set forth in the Court's previous summary judgment decisions and will not be repeated.  Where facts pertinent to a particular defendant are necessary to understand the instant decision, those facts will be set forth below.

## III.   STANDARD OF REVIEW

The Court will apply the well-established standard for deciding summary judgment motions as more fully set forth in the March 31, 2006 Decision and Order in Ingrao II.  See 3/31/06 Dec. & Ord., pp. 2-4 [dkt. # 91] in Ingrao II.

---

[1]See Ingrao v. County of Albany, No. 1:01-CV-730, 2006 U.S. Dist. LEXIS 70935, 2006 WL 2827856 (N.D.N.Y.  Oct. 2, 2006).

**IV.   DISCUSSION**

**a.  Law of the Case**

In Ingrao II, Plaintiffs assert claims under 42 U.S.C. § 1983 ("Section 1983")

contending that Defendants' actions, or inactions, deprived the infant plaintiff, RBI, of his

right to due process as guaranteed under the Fourteenth Amendment to the United States

Constitution, see Compl. in  Ingrao II (First Claim for Relief), [dkt. #1], and violated state

common law duties that Defendants purportedly owed to RBI.  Id.  (Second & Third Claims

for Relief).  Defendants move for summary judgment contending that the Section 1983

claims against them must be dismissed because Plaintiffs have failed to establish that any

of the Defendants violated RBI's federally protected rights, or, alternatively, that

Defendants are entitled to qualified immunity.  Defendants also assert that Plaintiffs' state

law claims are barred because Plaintiffs failed to identify any such claims in the Notice of

Claim served on the County of Albany.

Two previous decisions define the parameters of the claims in this matter and

constitute relevant law of the case.  The first is the decision on the previous summary

judgment motions in Ingrao II.  See 3/31/06 Dec. & Ord. [dkt. # 91] in Ingrao II.  In that

decision, the Court dismissed, inter alia, all claims against Defendant Fitzpatrick.  Because

Fitzpatrick, like the current movants, was an ACDSS employee, the decision on her motion

is relevant to many of the arguments raised on the instant motion.  On Fitzpatrick's motion

the Court held:

> Plaintiffs seemingly contend that Fitzpatrick violated RBI's substantive due
> process rights because she failed to move for termination of Ruth B.'s
> parental rights. See Pl. Sur-Reply Mem. L. p. 2. As Defendant points out,
> however, there is no authority for the proposition that a caseworker has the

4

obligation to move to terminate parental rights.  Indeed, it is doubtful whether an individual caseworker, as opposed to the agency for which she works, is entitled to commence a parental termination proceeding. See N.Y. Soc. Serv. Law 384-b(3)(b).   To the extent that the substantive due process claim is based upon Fitzpatrick's failure to otherwise stop the contact between Ruth B. and RBI, the claim is also deficient.  The uncontested facts indicate that Fitzpatrick supervised visitation between RBI and [his biological mother] Ruth B. because a court ordered the visitation. If Fitzpatrick could not have commenced a parental termination proceeding of her own accord or otherwise stopped the visitation, then the Court fails to see how there could be the requisite causation between RBI's injuries and Fitzpatrick's failing to act in this regard. See e.g. Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir. 2004).

Further, and assuming that Fitzpatrick could have commenced a parental termination action or suspended court ordered visitation (or at least put such action in motion),  the Plaintiffs fail to present proof from which a reasonable fact finder could conclude that Fitzpatrick acted, or failed to act, with the requisite mental state to make out a viable substantive due process claim. See [Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)]; [Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 145 (2d Cir. 1981)]; [Lynn v. St. Anne Institute, 2006 WL 516796, at *5 (N.D.N.Y. March 2, 2006)].  There is no evidence that Fitzpatrick disregarded a known risk to the child, made a discretionary decision that allowed Ruth B. contact with RBI,  allowed more contact than the court order required, hid what she observed during the visitation, or allowed Ruth B. to injure the child during visitation.  Despite Plaintiffs' broad conclusory allegations to the contrary, there is no evidence from which a reasonable fact finder could conclude that the child suffered any injury because of Fitzpatrick's actions, or inactions, or that she displayed deliberate indifference to the child's well being during the period of time that she served as his case worker or from the response to the July 1993 hotline call.

To the extent that Plaintiffs' Section 1983 claim against Fitzpatrick is based on a procedural due process violation, the claim fails because the discretionary aspects of  parental termination proceedings and child protective actions in New York fail to create actionable property or liberty interests. See [Hilbert S. v. County of Tioga, 2005 WL 1460316, at *10 - *13 (N.D.N.Y. June 21, 2005)].

Still further, even if Fitzpatrick had the power to commence a parental termination proceeding or otherwise interfere with visitation, the dictates of New York law in effect at the time generally required that diligent efforts be made to assist, develop and encourage a meaningful relationship between parent and child, including insuring visitation.  See In re Marino S., Jr., 100

N.Y.2d 361, 368-69 (2003).   Thus, it cannot be said that Fitzpatrick acted objectively unreasonably under the law in existence at the time by failing to move for parental termination or preventing visitation.  Therefore, and in the alternative, she is entitled to qualified immunity for any conceivable constitutional violation that arises from her alleged failure to act in this case. Accordingly, all Section 1983 claims asserted against Teresa M. Fitzpatrick are DISMISSED.

The state law claims against Teresa M. Fitzpatrick are also DISMISSED because Plaintiffs failed to identify any claims against this defendant in the Notice of Claim served on the County of Albany.  See Moore v. Melskey, 14 A.D.3d 757, 759 (3rd Dept. 2005).

3/31/06 Dec. & Ord.  in Ingrao II at pp. 12-14 (footnotes omitted).

The second decision relevant to the instant motion is the one issued on Albany

County's summary judgment motion in Ingrao I.  See 10/2/06 Dec. & Ord. in Ingrao I.

There, the Court dismissed all federal claims except RBI's substantive due process claim.

Id.  In denying summary judgment on this claim, the Court wrote:

In support of RBI's substantive due process claim, Plaintiffs assert a host of individual theories which, they contend, constitute separate policies or practices that demonstrate ACDSS's deliberate indifference to RBI's welfare and that caused him to suffer harm.  In this regard, Plaintiffs assert that the ACDSS had separate policies or customs of : (1) failing to move for termination of the parental rights of the parents of foster children in its charge although authorized to do so; (2) failing to investigate and/or report evidence of abuse or neglect occurring to foster children in its charge; (3) "not protecting foster children from being hit by older foster children if there were no marks left;" (4) failing to train or supervise caseworkers in certain aspects of their job, such as detecting and treating emotional difficulties or sexual abuse experienced by foster children; (5) failing to train and supervise caseworkers on intervention tools and procedures that are designed to protect children in foster care; (6) failing to train and supervise caseworkers on proper monitoring of the welfare of children in long-term foster care placements; and (7) failing to train caseworkers on "matching children to foster families."  See Plf. Mem. L., pp. 4-21.

Although the parties attempt to parse out each of these alleged failures for purposes of determining whether any one, individually, arose to the level of a policy, practice, or custom causing a substantive due process violation, the Court sees the allegations as interrelated and inextricably intertwined.  The

allegation, at least as far as the Court can see, is not that RBI had a substantive due process right to have his biological mother's parental rights terminated, or a substantive due process right to have caseworkers implement certain "intervention tools," or even a substantive due process right to have social service officials follow any specific state-mandated procedures, but rather that he had a substantive due process right to be safe and protected while in the care of the ACDSS.  In this case, if there is a substantive due process violation, it will be because a jury finds, from the totality of circumstances, that the ACDSS was deliberately indifferent to this right as evinced by ACDSS's failure to investigate dangers that were know (or reasonably should have been known), and failed to implement available procedures that could have ameliorated such dangers.

A few points require clarification.  First, from a factual perspective, the substantive due process claim is a close call.  The parties have submitted a mountain of evidence on these motions that includes a two-thousand (2,000) page case record chronicling ACDSS's involvement with RBI while he was in ACDSS's care.  While Plaintiffs' counsel has done a thorough job of wading through these records and picking out instances that arguably demonstrate that ACDSS caseworkers could have done a better job, the extensive record hardly reflects that RBI was left unsupervised and forgotten while in foster care. Because a reasonable jury might conclude that the conglomeration of these instances evince a pattern, practice, or custom of deliberate indifference to RBI's rights, Defendant's motion for summary judgment must be denied.  By the same reasoning, however, the record hardly reflects a situation that would entitle Plaintiffs to a judgment as a matter of law on this substantive due process claim.  Therefore, Plaintiffs' cross-motion in this regard must also be denied.

Second, a legal issue bears noting.  The Court is not holding that RBI's substantive due process rights might have been violated merely because ACDSS caseworkers failed to terminate Ruth B.'s parental rights, or failed to follow certain protocols or state mandated procedures.  Rather, the Court's decision to deny Defendant's motion for summary judgment is based upon the view that a reasonable jury might conclude, based on the totality of circumstances presented in this case, that the failure of ACDSS caseworkers to use tools that could, in some way, serve to protect the child from harm, or to be trained in the use of these tools, amounted to deliberate indifference to RBI's safety.  Thus, a jury might conclude that, in this particular case, the failure to move to terminate Ruth B.'s parental rights, or to file certain reports regarding RBI's treatment, could be part of the *res gestae* that amounts to a policy or practice of deliberate indifference to RBI's well being that existed the ACDSS.  By the same reasoning, however, a jury might conclude that the ACDSS's decision not to take certain action (such as deciding not to move to terminate Ruth B.'s parental rights or failing to remove RBI from his

mother's care sooner during the "trial discharge") was reasonable under the law and circumstances as they existed at the time, and that ACDSS's conduct in failing to move to terminate parental rights (or in failing to stop visitation earlier) did not evince deliberate indifference to RBI's safety while in foster care.   In this regard, a jury could conclude that the complained of actions or omissions were reasonable under the circumstances and thus do not, either individually or in the context of all the facts and circumstances related to RBI, evince a deliberate indifference to RBI's right to remain safe while in ACDSS's care.

Id. p. 20-21.

With these holdings in mind, the Court turns to the claims against the moving Defendants.

### b.  State Law Claims

Defendants contend that the state law claims against Claudette M. Grossi, Janet Lynch, Margaret Flynn, Andrea Burger, Barbara M. Lynch and Jo Hepinstall must be dismissed because Plaintiffs failed to identify any claims against these defendants in the Notice of Claim served on the County of Albany.  See Def. Ex. "AA."   Plaintiffs have not opposed this argument.  Such silence is generally deemed implied consent to granting that portion of the motion.  See McDonald v. Gonzales, 2007 WL 951445, at * 8 (N.D.N.Y. March 27, 2007)("The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion.")(citations omitted)(McAvoy, S.J.); see also Topliff v. Wal-Mart Stores East LP, 2007 WL 911891, at *7  (March 22, 2007)("Failure to oppose one of the legal arguments advanced by a movant on a motion to exclude expert testimony shall be deemed 'consent' to exclusion based on that legal argument.")(Lowe, M.J.).

Whether dismissal of the state law claims is consented to or not, dismissal is

8

required because Plaintiffs failed to identify any of the individual Defendants in their Notice of Claim. See Moore v.  Melskey, 14 A.D.3d 757, 759 (3rd Dept. 2005).   Thus, these claims against the remaining individual defendants are dismissed.

### c.  Section 1983 Claims

The Court turns next to the Section 1983 claims.  For the reasons discussed in the March 31, 2006 Decision and Order in Ingrao II, Plaintiffs fail to assert a cognizable procedural due process claim and, therefore, any such claims asserted against the moving defendants are dismissed. See 3/31/06 Dec. & Ord. in Ingrao II at pp. 12-14.  With regard to Plaintiffs' substantive due process claims, the Court will address each defendant individually.

### 1.  Marge Flynn

Defendant Marge Flynn was RBI's caseworker from November 25, 1991 to June 30, 1994.  Like with the claims against Defendant Fitzpatrick, Plaintiffs argue that Flynn violated RBI's constitutional right to substantive due process because she was aware of problems during the visitation between RBI and his biological mother, Ruth B., yet failed to stop the visitation or to petition to terminate Ruth B.'s parental rights.  The Court finds that the allegations against Flynn, even if true, do not rise to the level of a cognizable substantive due process violation.

First, as set forth in the October 2, 2006 Decision and Order in Ingrao I, the Court found that a viable substantive due process claim might arises from the totality of circumstances presented during RBI's lengthy stay in ACDSS's care.  However, because Flynn was not responsible for all of the actions taken, or not taken, by the ACDSS, she

cannot be held responsible for any constitutional violation that might be found to have occurred from the totality of the circumstances.

Second, the allegations against Flynn based upon her involvement with RBI do not rise to the level of a cognizable substantive due process violation. As set forth in the "Background" section of the October 2, 2006 Decision and Order in Ingrao I, the ACDSS caseworkers, including Flynn, monitored and documented the events and occurrences during RBI's visitation and "trial discharge" with his mother.  See 10/2/06 Dec. & Ord. in Ingrao I, pp. 4-8.[2]   As indicated, contact between mother and child was mandated by court order and required under New York law at the time unless evidence existed of significant continuing maltreatment of the child.  See In re Marino S., Jr., 100 N.Y.2d at 368-69;   N. Y.  Soc.  Serv.  Law § 384-b(1)(McKinney's 1998).  While the facts, taken in the light most favorable to Plaintiffs, indicate that there were problems during this contact before January 11, 1994,[3] these problems were not so manifest that a reasonable fact finder could conclude that the failure to stop the contact between mother and child constituted an omission that was so egregious or so outrageous that it could be said to shock the contemporary conscience.  Pena, 432 F.3d at 112 ("In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous,

---

[2]From May 7, 1993 to January 11, 1994, ACDSS attempted  a "trial discharge" whereby RBI lived with Ruth B. on a full time basis although ACDSS retained legal custody and the ability to monitor RBI during his time with his mother.  Also during the trial discharge, the McElroys, the foster family with whom RBI lived before the trial discharge, were allowed regular visits with RBI.

[3]On January 11, 1994, after a call was placed to the Child Abuse Hotline alleging that Ruth B. had hit, pushed, spit on, bitten, pinched and yelled at RBI, ACDSS removed RBI from his mother's physical custody and placed him in the foster home where he had resided prior to the trial discharge.

that it may fairly be said to shock the contemporary conscience.'") (quoting County of

Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, (1998)).  Flynn documented the conditions

that she observed in her case file, and discussed available options with her supervisor.

The fact that she did not stop the contact before January 11, 1994, or move to terminate

parental rights, does not amount to a substantive due process violation in this situation.

While a fact finder *might* conclude that Flynn was negligent in carrying out her caseworker

duties, negligence is insufficient to support a Section 1983 claim.  County of Sacramento

v. Lewis, 523 U.S. at 849 ("negligently inflicted harm is categorically beneath the threshold

of constitutional due process.").

Assuming, *arguendo,* that a constitutional violation could be made out against Flynn

for her acts or omissions, she is entitled to qualified immunity. Given New York law at the

time that required county departments of social services to make diligent efforts towards

reunification of a child in foster care with the child's biological parents, "no rational jury

could fail to conclude that it was objectively reasonable for the defendant[ ] to believe that

[she][was] acting in a fashion that did not violate a clearly established right" when she

documented the problems she observed but did not take further action to stop the

visitation or terminate Ruth B.'s parental rights.  In re State Police Litig., 88 F.3d 111, 123

(2d Cir. 1996).  All Section 1983 claims against Marge Flynn are dismissed.

### 2.  Claudia M. Grossi

Claudia M. Grossi was RBI's caseworker from June 30, 1994 to July 5, 1996 when

RBI left for Florida with the Ingraos.  Plaintiffs contend that Grossi violated RBI's

substantive due process rights because Grossi was advised that RBI was acting in a

sexually inappropriate manner

> but she never reported it to the State abuse hotline, or otherwise investigated it.   She did not refer RBI for a sexual abuse evaluation at the St. Anne's Institute.  She did not provide the necessary further sexual abuse therapy recommended by the St. Anne's Institute.  She did not tell the consultant at the St. Anne's Institute that RBI had been sexually and physically abused earlier, and she knew about this.  She did not tell the [Ingrao] family about the sexual abuse of the St. Anne's report, so that RBI could get the therapy and treatment required.

Plts. Mem L. pp. 17-18.   Plaintiffs also contend Grossi learned of inappropriate conduct in

RBI's foster home but did nothing about it.  Id.  p. 18.

Many of the factual contentions that Plaintiffs rely upon are contrary to the facts the

Court found established in Ingrao I.  In this regard,  the Court wrote:

> In May of 1994, Ruth B. surrendered her parental rights. . . . On June 30, 1994, RBI was placed in the Does' foster home as a pre-adoptive placement. However, while the child was at the Does' home, he repeatedly acted in a violent and sexual manner (simulating sexual acts with dolls, exposing himself to the Does' young daughter, and masturbating).  On August 11, 1995, ACDSS caseworker Claudia Grossi requested that an evaluation be conducted of RBI at the St. Anne's Institute due to the Does' reports that RBI repeatedly "acted out" in a sexual manner and because the child "reportedly tantrums excessively at home and in school."  Plt. Ex. OO.  The evaluation request, which was filled out by Grossi, indicated that sexual abuse was suspected. Ex. "NN."  Grossi testified at her deposition, however, that at the time she requested the evaluation she did not know whether RBI had himself been subjected to a sexual act, and believed it was possible that he might have witnessed sexual acts which, according to Grossi, would be within the definition of sexual abuse. See Gross Dep., pp. 133-35 (ex. "UUUU").

> The evaluation was conducted by the St. Anne Institute's Sex Abuse Preventive Services program on October 17, 1995.  During the evaluation, when asked if anyone ever touched his private parts, RBI responded "a baby."  Ex. OO. He did not disclose any particular instances of sexual abuse occurring to him during the evaluation. Id.  The Does indicated during the evaluation that their main concern was RBI's continually escalating level of tantrums and aggressive behaviors, and revealed that at times their 15-year-old son had "backhanded" RBI when he became aggressive. Id.  The Does indicated that they thought the best course of action was for the ACDSS to find RBI another pre-adoptive home.   ACDSS did not immediately remove

12

RBI from the Does's home.

In April of 1996, ACDSS requested that Children's Hospital in Boston evaluate RBI. The main concern presented at this evaluation was RBI's aggressiveness. See Ex. QQ. The evaluators found that "RBI would appear to be presenting more with behaviors that were engendered by his environment, rather than a clear cut, biologic-based psychiatric or neurologic disorder." Id. The evaluators surmised that RBI's behavioral problems might have been caused by lack of early nurturing, abuse or maltreatment during early life, repeated changes in family settings during his life, frustration arising from his hearing impairment and limitations on his ability to communicate, a form of Attention Deficit/Hyperactivity Disorder, or a combination of all of these. Id. It was concluded that, in order to address these issues, "[m]uch support will be needed by the family [RBI] lives with and the school he attends." Id.

In July 1996, RBI was placed in the pre-adoptive foster home of Plaintiffs Bradley and Heidi Ingrao. Before RBI was placed in their home, the Ingraos told ACDSS representatives "that they could not adopt a child who had been sexually abused." Plaintiffs contend that, despite reason to believe that RBI had been the victim of sexual abuse and was suffering from emotional disturbances caused by past abuse and/or neglect, ACDSS assured the Ingraos that RBI had not been sexually abused.

Almost immediately, the Ingraos observed numerous inappropriate acts by RBI. In addition, RBI told the Ingraos that the Does' son would play "snake" with him, dress him in women's clothes, put lipstick on him, and put nail polish on him, all of which the Ingraos felt were indicative of sexual abuse by the Does' son. B. Ingrao Dep. p. 160 (ex. "XXX"). Bradley Ingrao also testified that after school started in September 1996, RBI began to regularly become so "agitated" that the Ingraos would need to physically restrain RBI "for hours at a time." Id. at 156. Because RBI would break things, including putting his hands through glass windows, the Ingraos had to maintain a room in their house "with everything removed from it, Plexiglas on the windows and mattresses and cushions on all walls and floor, so that [RBI] could be restrained." Id. The Ingraos, who lived in the State of Florida at the time, spoke with their local social services agency and requested that the child see a psychiatrist. Id. p. 166. The psychiatrist diagnosed the child with Attention Deficit Disorder and prescribed a medication but, other than a limited sedative effect from the medication, RBI's conduct continued. Id. pp. 166-67. Plaintiffs contend that in the few conversations they had with ACDSS's representatives, they were not told that RBI had been suspected of having been sexually abused, and instead were told that RBI just needed a loving and stable home.

13

10/2/06 Dec. & Ord. in Ingrao I, pp. 8-10.

For the following reasons, Plaintiffs have failed to set forth sufficient facts upon which a fair mined trier of fact could reasonably conclude that Grossi violated RBI's substantive due process rights.  First, Grossi was not personally responsible for the child during the entirety of his stay in the custody of ACDSS and, thus, she cannot be personally responsible for any substantive due process claim arising from the totality of circumstances as discussed in Ingrao I.

Second, the facts fail to establish that Grossi acted with deliberate indifference to RBI's needs. When presented with a suspicion that RBI might have been sexually abused, Grossi sought out professional advice.  However, RBI did not disclose specific instance of sexual abuse during the evaluation at the St. Anne's Institute.  While the evaluation revealed that RBI was being "backhanded" by the Does' son when RBI became aggressive,[4] there was no indication that RBI was suffering physical injury from the conduct.  Rather, the report revealed that the Does were fearful for the safety of their own two children, including their then-10 year old daughter, who often locked themselves in their rooms when RBI became aggressive.  See Plf. Ex. "OO."  Certainly, the conduct by the Does' then-15 year old son was inappropriate, but given the lack of injury to RBI, Grossi's failure to act more quickly to remove RBI from the home does not establish that she was deliberately indifferent to a known injury or a known risk to RBI. See Pena, 432 F.3d at 113 ( Deliberate indifference "requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk.");

---

[4]The Report from St. Anne's Institute indicates that the Does reported that RBI's aggressive behavior included "throwing objects, spitting, biting, kicking, scratching, and putting holes in the walls."  Plf. Ex. "OO."

14

see also Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 145 (2d Cir.

1981)("Defendants may be held liable . . . if they . . . exhibited deliberate indifference to a

known injury, a known risk, or a specific duty, and their failure to perform the duty or act to

ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under

the Constitution.").

        To the extent that Plaintiffs complain that Grossi's failure to advise the Ingraos of

the suspicion that RBI had been sexually abused violated RBI's substantive due process

right,[5] the claim lacks both a demonstration of deliberate indifference and causation

between the omission and RBI's purported injury.   The evaluation at the St. Anne's

Institute did not conclude that RBI had been sexually abused, and, contrary to Plaintiffs'

contention, did not recommend a specific course of sexual abuse therapy for RBI. See Plf.

Ex. "OO."  Rather, the St. Anne's Institute report recommended that RBI

> be re-referred once he is situated in a more permanent environment with a
> caretaker who is willing to assist him in therapy.  In the interim, [St. Anne's
> Institute] has offered to assist the [Doe] family on an emergency basis to
> work on safety issues.  Other goals for future work should include behavior
> management skills and addressing RBI's confusion related to his biological
> mother.

Id.

        As the facts demonstrate, ACDSS employees sought out the recommended

permanent home for RBI and found it with the Ingraos.  While the placement with the

Ingraos was not immediate, Grossi's conduct does not evince deliberate indifference to

RBI's well being given the lack of urgency in the St. Anne's Institute Report.   Id.

        Once RBI was placed with the Ingraos as a pre-adoptive home, they moved to

_____

        [5]In Ingrao I, the Court found that the Ingraos did not have a substantive due process claim based on
these allegations. See 10/2/06 Dec. & Ord. in Ingrao I, p. 21.

Florida and received social services support for RBI through a Florida social services

agency.  See Def. Local Rule 7.1(a)(3) Stat. of Mat. Facts Not In Dispute, ¶¶ 28-29.

Grossi's failure to "re-refer" RBI to St. Anne's Institute did not constitute deliberate

indifference to RBI's needs because, until the child was placed with the Ingraos, RBI was

not in a permanent environment.  Further, the facts demonstrate that the Ingraos

immediately realized the need for, and sought out, professional counseling for RBI.  Thus,

there is no causation between Grossi's omission in failing to advise the Ingraos of the

need for further evaluation of RBI and any injury he may have suffered.

Assuming arguendo that a substantive due process claim could be made out

against Grossi, she is entitled to qualified immunity.

> "[E]ven where the law and the scope of permissible official conduct are
> clearly established, the defense of qualified immunity will protect a
> government official if it was 'objectively reasonable' for him to believe his
> acts were lawful." Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992). The
> reasonableness test is met, and the officer is entitled to qualified immunity, if
> "reasonably competent officials could disagree" as to whether the conduct at
> issue would violate clearly established rights. Malley v. Briggs, 475 U.S. 335,
> 341, 106 S. Ct. 1092, 89 L. Ed.2d 271 (1986); [Cartier v. Lussier, 955 F.2d
> 841, 846 (2d Cir. 1992)]; Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1 995).
> The "qualified immunity standard gives ample room for mistaken judgments
> by protecting all but the plainly incompetent or those who knowingly violate
> the law." Hunter v. Bryant, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed.2d
> 589 (1991).

Matthews v. City of N.Y., 2006 WL 842392, at * 6 (S.D.N.Y. March 27, 2006).

When concerns were brought to Grossi's attention regarding the potential that RBI

had been sexually abused, she sought out a professional evaluation.  When she learned

of problems in the Does' home, she monitored the situation while seeking a pre-adoptive

home, and sought out a second evaluation before the child was removed from the Does'

home.  No reasonable fact finder could conclude that Grossi acted objectively

16

unreasonably in taking the course that she did given the evidence that she was presented

with.  Accordingly, all Section 1983 claims against Claudia M. Grossi are dismissed.

### 3.  Janet Lynch

Janet Lynch was RBI's caseworker from November 15, 1990 through 1996, and

also supervised Marge Flynn and Claudia Grossi during this time.  Plaintiffs contend that

Lynch  "violated RBI's substantive due process rights by direct participation and as a

supervisor for [Flynn and Grossi]."  Plts. Mem. L. p. 15.  In this regard,  Plaintiffs contend

that Lynch

> met directly with [Ruth B.] and RBI, and took reports of activities that should
> have prompted her to act and report, and to remove and protect RBI.   She
> committed the same personal violations as did Marge Flynn, because she
> was present and aware of them to the same extent as Marge Flynn.
>
> Janet Lynch in August of 1992 and in November of 1992 ignored the
> recommendations and urgings of the permanency consultant and did not
> move for termination of parental rights.

Id.

Plaintiffs further contend that Lynch "was grossly negligent" in her supervision of

Marge Flynn because she did not (1) instruct Flynn to move to terminate parental rights;

(2) follow up on reports from Flynn that Ruth B. was acting inappropriately with RBI; and

(3) did not make independent reports to the child abuse hot line.  Plaintiffs make similar

allegations with regard to Lynch's supervision of Grossi, contending that Lynch was

responsible for Grossi's constitutional violations and grossly negligent in supervising

Grossi because Lynch was supposedly aware of Grossi's suspicions of sexual abuse but

acquiesced in Lynch's inaction.  See Plf. Mem. L. pp. 16-17.

Lynch is entitled to summary judgment because the actions or inactions of Marge

Flynn or Claudia Grossi, either singularly or in totality, do not arise to the level of a

17

substantive due process violation. Further, and assuming arguendo that they do, Lynch is entitled to qualified immunity for the same reasons that Flynn and Grossi are entitled to qualified immunity. See Amnesty Amer. v. Town of West Hartford, 361 F.3d 113, 127 (2d Cir. 2004)( "Plaintiff[ ] must establish [defendant's] deliberate indifference by showing that 'the need for more or better supervision to protect against constitutional violations was obvious,' but that [defendant] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct.")(citing Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)); Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)("A supervisor may be found liable for his deliberate indifference to the rights of others . . . for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury.").  Thus, all Section 1983 claims against Janet Lynch are dismissed.

### 4.   Jo Hepinstall

Jo Hepinstall worked in ACDSS's Foster/Adoption Home-Finding Unit and was involved in the certification process for the Does as a foster home for RBI.   Plaintiffs allege that she violated RBI's constitutional rights because she:

> did not perform a home certification study, intervene, investigate, or follow up on RBI's sexually inappropriate behavior, or report same to the hotline.  She also did not provide appropriate psychiatric services to assist RBI when he was at the [Does' foster home], or to intervene or remove him from getting backhanded by [the Does' son].

Plts. Mem. L. p. 20.

The facts do not establish a viable substantive due process claim against Hepinstall.  After the McElroys decided they could no longer keep RBI in their home, the

18

Does were identified as a viable "pre-adoptive" foster home placement for RBI because (1)

Mrs. Doe was RBI's teacher in his special education pre-school program for deaf children

and thus seemed uniquely qualified to attend to his special needs, and (2) the Does

expressed an interest in possibly adopting RBI.  See 10/2/06 Dec. & Ord. in Ingrao I, p 8.

The Does were cleared through the New York State Central Register in the foster home

certification process.  Although the final paperwork in the certification process was not

completed before RBI was placed in the Does' home, Plaintiffs are unable to point to any

evidence that would lead a reasonable person to conclude that, before he was placed

there, RBI was at risk in the Does' home.  Thus, no  reasonable fact finder could conclude

that Hepinstall was deliberately indifferent to RBI's well being by assisting in his placement

in the Does' home.

    Further, as set forth above, RBI was sent for a sexual evaluation once in the Does

home yet made no specific reports of being sexually abused there.  While it did come to

light that he was sometimes  "backhanded" by the Does' son, there was no evidence of

injury to the child.  Hepinstall, who was not RBI's casework, could reasonably rely on

Claudia Grossi's investigation into the circumstances.  Given Hepinstall's limited

involvement with the "backhanding" issue, and absent any other indication that RBI was

suffering injury in the Does' home, no reasonable fact finder could conclude that she was

deliberately indifferent to RBI's welfare by her failure to remove RBI from the Does' home.

Thus, the circumstances did not rise to the level that would establish a substantive due

process claim against Hepinstall.

    Assuming that Hepinstall's inaction upon learning that the Does' son was

backhanding RBI could be deemed a substantive due process violation, Hepinstall is

entitled to qualified immunity for the same reasons that Claudia Grossi is entitled to

qualified immunity.  Accordingly, all Section 1983 claims against Hepinstall are dismissed.

### 5.  Barbara Lynch

Barbara Lynch was Jo Hepinstall's supervisor in the Foster/Adoption Home-Finding

Unit.  Plaintiffs contend that she personally violated RBI's constitutional rights by

> (1) misleading and failing to disclose to the [Ingrao] family the true facts
> about RBI from 1996 through the filing of this suit, (2) failing to advise of the
> prior sexual abuse history and the recommendation for sexual abuse therapy
> form the St. Anne's Institute in October of 1995 . . . , (3) failing again to say
> anything when RBI was hospitalized with post-traumatic stress disorder in
> 1998 . . ., and then in 1999 . . ., and (4) telling the [Ingrao] family that they
> could not get prior records from the RBI [*sic*] because of the law.

Plt. Mem L. p. 19.

Plaintiffs also contend that Barbara Lynch violated RBI's constitutional rights by

failing to provide RBI with the after-care services required by the New York Social Services

Law, and that she has supervisory liability for the unconstitutional acts of Jo Hepinstall.

Addressing these arguments in reverse order, there is no supervisory liability

because Plaintiffs have not established that Joanna Hepinstall violated RBI's substantive

due process rights.  Assuming that Hepinstall  did violate RBI's substantive due process

rights, Barbara Lynch is entitled to qualified immunity for the same reasons that Hepinstall

is entitled to qualified immunity.

The failure to provide state-mandated after-care services does not rise to the level

of a substantive due process violation.  As set forth above, the Ingraos moved to Florida

almost immediately after RBI's was placed in their home and obtained professional

services for RBI in Florida after they observed numerous inappropriate acts by him.  No

reasonable fact finder could conclude under these circumstances that the failure to provide after-care services in the State of New York was the result of deliberate indifference on Barbara Lynch's part, or that the failure caused RBI to suffer an injury after he left with the Ingraos.  See Doe, 649 F.2d at 145.  The same conclusion must be reached with regard to Plaintiffs' conclusory contentions that Barbara Lynch violated RBI's constitutional right to substantive due process by failing to advise the Ingraos of RBI's "prior sexual abuse history" or "telling the [Ingrao] family that they could not get prior records from the RBI [*sic*] because of the law."

Finally, assuming that a constitutional violation could be made out, Barbra Lynch is entitled to qualified immunity because no reasonable fact finder could conclude that she acted objectively unreasonably in these circumstances. All Section 1983 claims against her are dismissed.

### 6.  Andrea Burger

        At all pertinent times, Andrea Burger was ACDSS's Director of Family and Children Services.  Plaintiffs contend that she violated RBI's constitutional rights "by deciding twice that termination of parental rights was not going to happen for RBI."  Plt. Mem L. p. 20. Assuming she made these decisions, and assuming for purposes of discussion that such decisions rose to the level of a substantive due process violation, Burger is entitled to qualified immunity given the undisputed facts of this case and the state of New York law at the time. It was not objectively unreasonable under these circumstances to work towards the reunification of RBI with Ruth B. despite recommendations by a permanency consultant that the agency should seek to terminate Ruth B.'s parental rights.

Plaintiffs also contend that Burger has supervisory liability for all of the purported failings of the other individual defendants.  In this regard, Plaintiffs assert that "[t]he range of statutes ignored or violated is so wide that it is a fair inference that Andrea Burger knew of these practices and condoned them.  If she did not, then she was grossly negligent in training her supervisors and caseworkers, and in supervising them." Plf. Mem. p. 21.  Plaintiffs' allegations that Burger was aware of the purported failings of the ACDSS employees are conclusory at best.  Further, as noted previously in <u>Ingrao I</u>,

> The parties have submitted a mountain of evidence on these motions that includes a two-thousand (2,000) page case record chronicling ACDSS's involvement with RBI while he was in ACDSS's care.  While Plaintiffs' counsel has done a thorough job of wading through these records and picking out instances that arguably demonstrate that ACDSS caseworkers could have done a better job, the extensive record hardly reflects that RBI was left unsupervised and forgotten while in foster care.

10/2/06 Dec. & Ord. in <u>Ingrao I</u> at pp. 20-21.

Under the circumstances of this case and given the law in effect in New York at the time, "no rational jury could fail to conclude that it was objectively reasonable for the defendant[ ] to believe that [she][was] acting in a fashion that did not violate a clearly established right" in her supervision of the ACDSS employees who were involved with RBI's care and supervision during his time in foster homes.  <u>In re State Police Litig.</u>, 88 F.3d at 123.  Accordingly, all Section 1983 claims against Andrea Burger are dismissed.

**V.  CONCLUSION**

For the reasons set forth above, Defendants Claudette M. Grossi, Janet Lynch, Margaret Flynn, Andrea Burger, Barbara M. Lynch and Jo Hepinstall's motion for summary judgment [dkt. # 94 in 1:04-CV-769] is **GRANTED,**  and all claims against these

defendants are **DISMISSED**.


**IT IS SO ORDERED**

DATED: April 26, 2007

Thomas J. McAvoy
Senior, U.S. District Judge